**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KA'LIAL GLAUD,**<br>**Plaintiff,**<br>**v.**<br>**THE NFL PLAYER DISABILITY AND SURVIVOR BENEFIT PLAN, *et al.*,**<br>**Defendants.** | **Case No. 25–cv–15373–ESK–EAH**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

In this Employee Retirement Income Security Act (ERISA) action, plaintiff Ka'Lial Glaud challenges the denial of neurocognitive disability benefits under his NFL Player Disability and Survivor Benefit Plan (Plan). In count one, Glaud seeks relief against the Plan for payment of benefits. In counts two and three, Glaud alleges that Dr. William Garmoe and Dr. Silvana Riggio, in their capacity as the Plan's medical advisory physicians (MAPs), breached their fiduciary duties and caused harm to the Plan. Defendants collectively move to dismiss those fiduciary duty claims. Because the Plan does not confer fiduciary authority on MAPs, I find that dismissal with prejudice of counts two and three is warranted.

## I. BACKGROUND

The disability board (Board) is the Plan's administrator and named fiduciary. (ECF No. 1 (Compl.) ¶¶ 18, 20, 55; ECF No. 29–2 (Plan) §§ 1.2, 9.2.) The Plan gives the Board "full and absolute discretion, authority, and power to interpret, control, implement and manage the Plan" and decide benefit claims. (Compl. ¶ 55; Plan § 9.2.) The Board maintains a network of neutral physicians, who examine each player. (Compl. ¶¶ 37–47; Plan § 12.3(a).)

When at least three Board members identify a medical issue related to whether benefits should be awarded, they may refer that issue to a MAP. (Compl. ¶¶49, 57; Plan §9.3(a).) "A MAP has authority to decide only those medical issues submitted by the … Board." (Plan §§9.3(c), 12.2(b).) A MAP submits a written determination to the Board, which is "final and binding regarding such [referred] medical issues." (*Id.* §§9.3(a), 12.2(b); Compl. ¶¶49, 50, 57.) The Board retains full discretion over all other matters, including Plan interpretation and benefit eligibility. (Compl. ¶57; Plan §12.2(c).)

Glaud applied for neurocognitive disability benefits on March 1, 2023. (Compl. ¶86; ECF No. 29–3 (Board Ltr.) p.2.) After evaluation by two Plan neutral physicians, the disability initial claims committee denied his claim on April 13, 2023. (Compl. ¶116; Bd. Ltr. p.2.) Glaud appealed to the Board on September 25, 2023. (Compl. ¶154; Bd. Ltr. p.2.) Glaud was examined by additional Plan neutral physicians and underwent an independent evaluation by a neuropsychologist. (Bd. Ltr. pp.2, 3.) On May 15, 2024, the Board referred for MAP review the question of whether Glaud acquired neurocognitive impairment. (*Id.* p.3; Compl. ¶¶58–60.) The referral was made under Plan Section 9.3(a) to Garmoe, a neuropsychologist, and Riggio, a neurologist. (Compl. ¶¶159, 160; Plan pp.58, 59.) Without examining Glaud, Garmoe and Riggio issued on June 8, 2024 a written report, finding Glaud's neurocognitive scores invalid and uninterpretable. (Compl. ¶¶161–165; Board Ltr. p.3.) They concluded that they could not determine whether he met the criteria for neurocognitive impairment. (Compl. ¶162; Board Ltr. p.3.)

At Garmoe and Riggio's "strong recommendation," Glaud underwent an additional psychological evaluation. (Compl. ¶¶163, 167.) The evaluating psychologist opined that Glaud had a neurocognitive disorder resulting from a traumatic brain injury. (*Id.* ¶¶168–172.) Glaud submitted that report to the Board on July 10, 2024. (*Id.* ¶173.) The Board voted to deny his appeal on

September 4, 2024. (*Id.* ¶ 177; Board Ltr. p. 2.) The Board issued its final denial letter the next day. (Compl. ¶ 178; *see generally* Board Ltr.) The letter stated that Glaud was ineligible for benefits under Plan Section 6.1(f). (Compl. ¶ 179; Board Ltr. p. 4.) It also stated that MAP decisions are "final and binding" on the referred medical issues under Plan Section 9.3(a). (Compl. ¶ 179; Board Ltr. p. 4) Despite conflicting medical evidence, the Board adopted Garmoe and Riggio's conclusion that the evidence precluded a reliable determination of neurocognitive impairment. (Compl. ¶¶ 179, 180; Board Ltr. p. 4.)

Glaud filed this action on September 9, 2025. (*See generally* Compl.) On November 27, 2025, defendants requested leave to file a motion to dismiss counts two and three. (ECF No. 21.) Glaud opposed defendants' request (ECF No. 22), and on December 19, 2025, I held a pre-motion conference (ECF No. 25). On February 6, 2026, defendants filed the motion to dismiss (Motion). (ECF No. 29–1 (Mov. Br.).) Glaud filed an opposition to the Motion (ECF No. 30 (Opp'n Br.)), in response to which defendants filed a reply (ECF No. 31 (Reply Br.)).

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure (Rule) 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require "detailed factual

allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

## III. DISCUSSION

Defendants move to dismiss counts two and three, arguing that: (1) MAPs are not fiduciaries as a matter of law because they exercise only medical discretion, and the Board retains exclusive discretion over benefit entitlement and plan interpretation; (2) Glaud alleges no plan-level loss; (3) the breach of fiduciary duty claims are conclusory and contradicted by Glaud's factual allegations; and (4) further discovery and amendments would be futile. (*See generally* Mov. Br.) Glaud contends that because the Plan gives MAPS "final and binding" authority over medical determinations governing benefit payments, and Garmoe and Riggio exhibited a pattern of ignoring disability evidence to serve their own financial interests, the Motion should be denied. (*See generally* Opp'n Br.) In reply, defendants emphasize the Board's independent authority over Plan eligibility and Glaud's pleading discrepancies. (*See generally* Reply Br.)

I will first address the threshold issue of whether Garmoe and Riggio are ERISA fiduciaries. If they are not, counts two and three fail, and the remaining grounds for dismissal need not be reached.

### A. <u>Fiduciary Status</u>

ERISA defines a fiduciary as a person who (1) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets"; (2) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so"; or (3) "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Because fiduciary is defined "not in terms of formal trusteeship, but in *functional* terms of control and authority over [a] plan," a party not expressly named as a fiduciary may serve as a functional fiduciary. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *Spine Surgery Assocs. & Discovery Imaging, PC v. INDECS Corp.*, 50 F. Supp. 3d 647, 655 (D.N.J. 2014). "[F]iduciary status does not attach to a party who 'merely perform[s] ministerial duties or processes claims.'" *Josef K. v. Cal. Physicians' Serv.*, No. 18–06385, 2019 WL 2342245, at *6 (N.D. Cal. June 3, 2019) (alteration in original) (quoting *Kyle Railways, Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516–18 (9th Cir. 1993)). Rather, "a party may qualify as a fiduciary 'if it has the authority to grant, deny, or review denied claims.'" *Id.* (quoting *Kyle Railways, Inc.*, 990 F.2d at 516–18).

"[M]any courts have held that the determination whether a person is acting as a fiduciary with respect to a plan under ERISA is a mixed question of fact and law." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F. Supp. 2d 869, 884 (E.D. Pa. 2011). "The determination whether benefits at issue are 'plan assets'—a component of the inquiry into whether a purported fiduciary owes a

duty with respect to the complained-of conduct—is also a mixed question of fact and law." *Id.* "Where there are no disputes of fact regarding the defendant's actions, the determination whether the defendant is an ERISA fiduciary is a question of law." *Id.*; *Srein v. Frankford Trust Co.,* 323 F.3d 214, 220 (3d Cir. 2003) (reversing the judgment in favor of the defendant because the district court erred in concluding that the defendant was not a fiduciary). But "if the parties dispute the facts that establish the defendant's fiduciary status, including whether the defendant had authority and control over the management and disposition of plan assets, then the issue should not be resolved at the motion to dismiss stage." *Edmonson*, 777 F. Supp. 2d at 884–85; *Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.,* 237 F.3d 270, 275 (3d Cir.2001) (reversing the dismissal of a breach of fiduciary duty claim because "further [factual] development is required and … [the] record … [is insufficient to] say that, as a matter of law, [the defendant] is not a fiduciary").

Here, the parties do not dispute what authority the Plan assigns to MAPs. They agree that Garmoe and Riggio's roles as MAPs are fixed by the Plan. Thus, their disagreement is not factual—*i.e.*, about what authority Garmoe and Riggio possess—but legal to determine how broadly ERISA requires that undisputed authority to be understood. There is no factual dispute concerning the scope of authority the Plan conferred and discovery cannot alter the Plan's allocation of decision making responsibility. By accepting Glaud's well-pleaded factual allegations as true, I will determine from the undisputed Plan provisions whether MAPs have discretionary authority over Plan administration within the meaning of ERISA.

Glaud argues that Garmoe and Riggio's "final and binding" authority renders them functional fiduciaries. (Opp'n Br. pp. 13–17.) But defendants contend that the "final and binding" language amounts only to professional

medical discretion over a limited aspect of the claims process. (Mov. Br. pp. 16–18.) I agree with defendants. The Plan gives the Board, not the MAPs, authority to administer the Plan and decide benefit claims. (Plan §§ 1.2, 9.2.) Instead, MAPs exercise medical judgment on a discrete issue. Their role is narrower and is limited to deciding "only those medical issues submitted by the … Board." (*Id.* § 12.2(b).) Plan Section 9.3(c) makes a MAP's decision final and binding, but it also specifies that the Board retains "full and absolute discretion, authority, and power" over Plan interpretation and whether a claimant is entitled to benefits. (*Id.* § 9.3(c).) Taken on its face, the Plan language reasonably indicates that MAPs play no more than a ministerial role in this process. *Cf. Spine Surgery Assocs.*, 50 F. Supp. 3d at 655 (finding that while the defendant relied on language in the plan that limited its authority, other provisions in the plan clearly afforded the defendant a degree of discretion, rendering it an ERISA fiduciary).

Garmoe and Riggio did not determine whether Glaud's claim or direct payment of Plan assets would be approved. The Board was bound by their medical determination that Glaud's neurocognitive scores were inconclusive. (Compl. ¶¶ 162, 163.) But that determination resolved only the medical issue submitted to them. (*See id.*) The Board retained ultimate discretion to determine whether the remaining Plan requirements were satisfied and whether Glaud was entitled to benefits. (*See* Plan § 6.1.) In other words, Garmoe and Riggio served as medical consultants, using their professional judgment to advise the Board. *See Confer v. Custom Eng'g Co.*, 952 F.2d 34, 38 (3d Cir. 1991) (holding that because the plan supervisor's role was limited to following the instructions of the administrator, it did not have any discretion to deny or allow a claim and was thus not an ERISA fiduciary).

Courts have consistently "refused to fit professionals … within the statutory definition [of ERISA] when all they have done is advise the trustees

of an ERISA plan." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (collecting cases); *Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1150–51 (3d Cir. 1989). "These courts supported this position by reading the … [statute] as speaking to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises." *Pappas*, 923 F.2d at 535. "[T]here is no *per se* rule that prevents professionals who render advice to an ERISA plan from becoming fiduciaries." *Id.* at 538. But to become a fiduciary, the professional must have "exercised … an unusual degree of influence over a [p]lan." *Id.*

Despite the Plan indicating otherwise, Glaud attempts to show Garmoe and Riggio's undue influence over the Plan by arguing that "the Plan delegates MAPs the authority to independently create and manage the criteria under which plan participants are medically evaluated." (Opp'n Br. p. 18.) Glaud emphasizes that Garmoe and Riggio co-authored the orientation manual provided to neutral physicians authorized to perform neurological and neuropsychological medical examinations under the Plan. (*Id.*; Compl. ¶¶ 188–190, 205–207.) It is unclear how authorship of a manual governing neutral physicians establish fiduciary authority in Garmoe and Riggio's distinct capacities as MAPs. The Plan itself sets the eligibility criteria to receive benefits. (Plan §§ 6.1, 6.2.) Neutral physicians examine claimants and prepare reports that inform the Board, while MAP review is a separate process governed by Plan Section 9.3(c). (*See* Reply Br. pp. 6, 7.)

In further support of his position, Glaud notes that Garmoe and Riggio routinely ignore evidence of neurocognitive impairment. (Compl. ¶¶ 195–197, 212.) These allegations do not change the fiduciary-status analysis. Assuming their history of unfavorable medical determinations in other cases could be considered, such conduct concerns how Garmoe and Riggio exercised

medical judgment; it does not expand the authority the Plan conferred on MAPs or establish discretionary authority over Plan administration or benefit entitlement. *See Josef K. v. Cal. Physicians' Serv.*, 477 F. Supp. 3d 886, 902 (N.D. Cal. 2020) (finding that a medical reviewer was not acting as a fiduciary when it applied medical criteria but did not make the actual coverage decision).

Accordingly, MAPs do not have discretionary authority over benefit entitlement. Since that authority is reserved for the Board, Glaud's ERISA fiduciary claims against Garmoe and Riggio cannot survive.

### B. Plan-Level Loss

Having concluded that Garmoe and Riggio are not ERISA fiduciaries, I need not reach defendants' remaining arguments. ERISA applies only to a "person who is a fiduciary with respect to a plan" and breaches a fiduciary duty. 29 U.S.C. §§1109(a), 1132(a)(2). Because fiduciary status is a threshold prerequisite to counts two and three and that prerequisite is not satisfied, defendants' alternative arguments concerning plan-level loss, the sufficiency of the alleged breaches, discovery, and the futility of amendment do not affect the Motion.

## IV. CONCLUSION

For the reasons stated above, the Motion is **GRANTED**. Counts two and three will be **dismissed with prejudice**. An order will follow.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: September 10, 2026